# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| CURTIS DESHAZER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| -vs- | ) Case No. CIV-23-45-F |
| | ) |
| L&W SUPPLY CORPORATION | ) |
| D/B/A BUILDING SPECIALTIES, | ) |
| ABC SUPPLY CO., INC., A TRADE | ) |
| NAME FOR AMERICAN | ) |
| BUILDERS & CONTRACTORS | ) |
| SUPPLY CO., INC., and SCOTT | ) |
| THOMAS, | ) |
| | ) |
| Defendants. | ) |

## **ORDER**

Before the court is Defendants' Motion for Partial Dismissal. Doc. no. 14. Plaintiff has responded, opposing dismissal, and defendants have replied. Doc. nos. 16 and 19. Upon due consideration of the parties' submissions, the court makes its determination.

I.

Plaintiff Curtis DeShazer (DeShazer), who is black, over 40 years of age, and suffers from certain medical conditions, was formerly employed as a "CDL Driver/ Crane Operator" by defendants L&W Supply Corporation d/b/a Building Specialties (L&W) and ABC Supply Co., Inc., a trade name for American Builders &

Contractors Supply Co., Inc. (ABC).[1]  His employment was terminated on or about June 29, 2021, by defendant Scott Thomas (Thomas), who is white, and who serves as "Branch Manager" for L&W and ABC.[2]  Thomas gave no reason for the termination, only that they "just decided to let [DeShazer] go."  Doc. no. 1, ¶ 39.  Thereafter, an ABC human resources specialist reported to the Oklahoma Employment Security Commission (OESC) that the date of the final incident that led to DeShazer's termination occurred on June 2, 2021, nearly a month before the termination.  L&W and ABC claimed that DeShazer had received a traffic citation which "reflect[ed] poorly on the Company."  *Id*., ¶ 40.  Another ABC human resources specialist subsequently informed the Equal Employment Opportunity Commission (EEOC) that DeShazer was

> terminated for continued poor job performance, including causing damage to company and customer property and receiving two driving citations while making a delivery on L&W's behalf.  The final straw came when a remote control used to operate the boom on his assigned delivery truck went missing.  It is the responsibility of the delivery driver to make sure that the remote control – which costs $7,000 to replace – is safely stowed in the cab of the delivery truck at the end of the shift.

*Id*., ¶ 41.

According to DeShazer, throughout his tenure, he received compliments on his work and received increases in pay. Id., ¶ 9.  Also, he alleges that he "did not take or misplace the remote control[.]"  *Id*., ¶ 43.  He alleges that a co-worker, who

---

[1] L&W is a distributor of building materials and construction supplies.  The company was acquired by ABC on or about November 1, 2016.

[2] DeShazer worked for the defendant entities or their predecessors on two occasions.  He was hired as a temporary employee in or around 2013/2014.  He was rehired as a "CDL Driver/Crane Operator" on or about April 2, 2019.  DeShazer had been employed almost 27 months before Thomas terminated him.

2

worked in the same truck with DeShazer the day the remote allegedly went missing, told Thomas that "the remote was in the truck while they were using it and was where it was supposed to be at the end of the day." *Id*., ¶ 44.

After exhausting administrative remedies with the EEOC, DeShazer filed this action against L&W, ABC, and Thomas. He seeks to recover damages arising out of his termination and other conduct which occurred during his employment. L&W, ABC, and Thomas move, pursuant to Rule 12(b)(6), Fed. R. Civ. P., to dismiss several of the claims alleged in DeShazer's complaint. Specifically, they seek to dismiss (1) claims against L&W, ABC, and Thomas for race discrimination, race-based hostile work environment, and retaliation under 42 U.S.C. § 1981 (Count I); (2) claims against L&W and ABC for race discrimination, race-based hostile work environment, and retaliation under Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. § 2000e, *et seq*. (Count II); (3) claim against Thomas under the Family Medical Leave Act of 1993 (FMLA), 42 U.S.C. § 2601, *et seq*. (Count IV); (4) claim against L&W and ABC for age discrimination under the Age Discrimination in Employment Act of 1967 (ADEA), 29 U.S.C. § 621, *et seq*., (Count V); (5) claim against Thomas for tortious interference with contractual/ employment relationship under Oklahoma law (Count VI); and (6) claim against Thomas for unlawful interference with prospective economic advantage under Oklahoma law (Count VII).

II.

*Section 1981, Title VII, and ADEA Discrimination Claims*

Defendants challenge the § 1981, Title VII, and ADEA discrimination claims, arguing that DeShazer's complaint fails to allege plausible claims of race and age discrimination. According to defendants, the facts alleged in the complaint are insufficient to state prima facie cases of race and age discrimination. The court disagrees.

DeShazer is not required to specifically allege all the elements of a prima facie case of discrimination.  *See*, Swierkiewicz v. Sorema N.A., 534 U.S. 506, 515 (2002).  Nevertheless, "the elements of each alleged cause of action help to determine whether [p]laintiff has set forth a plausible claim."  Khalik v. United Air Lines, 671 F.3d 1188, 1192 (10th Cir. 2012).  "[G]eneral assertions of discrimination . . . without any details whatsoever of events . . . are insufficient to survive a motion to dismiss.  While '[s]pecific facts are not necessary'. . . some facts are."  *Id*. at 1193 (alternation in original) (quoting Erickson v. Pardus, 551 U.S. 89, 93 (2007)).

To state a prima facie case of racial discrimination under § 1981 and Title VII and a prima facie case of age discrimination under the ADEA where the employee has been discharged, the employee must allege "'"(1) he belongs to a protected class; (2) he was qualified for his job; (3) despite his qualifications, he was discharged; and (4) the job was not eliminated after his discharge."'"  Mann v. XPO Logistics Freight, Inc., 819 Fed. Appx. 585, 595 n. 16 (10th Cir. 2020) (quoting Singh v. Cordle, 936 F.3d 1022, 1037 (10th Cir. 2019) (quoting Kendrick v. Penske Transp. Servs., Inc., 220 F.3d 1220, 1229 (10th Cir. 2000)); *see also*, Perry v. Woodward, 199 F.3d 1126, 1140 (10th Cir. 1999) ("An inference of discrimination is raised when an employer rejects an otherwise qualified minority [or 40 or older] employment candidate and thereafter does not eliminate the position for which the candidate was rejected.").  Upon review, the court finds that DeShazer's complaint contains sufficient factual matter to establish each of the elements of his prima facie cases of race and age discrimination.[3]  The court accordingly concludes that the race

---

[3] In conducting its review, the court accepts all well-pleaded facts as true, views those facts in the light most favorable to DeShazer, the non-moving party, and draws all reasonable inferences in DeShazer's favor.  *See*, Brooks v. Mentor Worldwide LLC, 985 F.3d 1272, 1281 (10th Cir. 2021).

discrimination claims under § 1981 and Title VII and the age discrimination claim under the ADEA survive dismissal under Rule 12(b)(6).[4]

*Section 1981 and Title VII Racially Hostile Work Environment Claims*

To state a race-based hostile work environment claim, "a plaintiff must, among other things, plead facts sufficient to show that the work environment 'is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" Brown v. LaFerry's LP Gas Co., Inc., 708 Fed. Appx. 518, 520 (10th Cir. 2017) (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993)). "A plaintiff must allege facts showing that the work environment 'is both subjectively *and* objectively hostile or abusive' under this standard." Id. (quoting Lounds v. Lincare, 812 F.3d 1208, 1222 (10th Cir. 2015)). "To meet the objective portion of this test, the alleged harassment must 'be of the character that it would be deemed hostile by a reasonable employee under the same or similar circumstances.'" Id. at 520-21.

"Proof of either severity or pervasiveness can serve as an independent ground to sustain a hostile work environment claim." Throupe v. University of Denver, 988 F.3d 1243, 1252 (10th Cir. 2021) (citing Lounds, 812 F.3d at 1222). To make this determination, the court "look[s] to the 'totality of the circumstances' and

---

[4]In reaching its decision, the court rejects defendants' argument, based on Allen v. Denver Public School Bd., 928 F2d 978, 983 (10th Cir. 1991), that DeShazer has not alleged facts of Thomas' personal involvement in the alleged discriminatory action for purposes of § 1981. DeShazer has sufficiently alleged Thomas' personal involvement because he has alleged Thomas terminated his employment. The court also rejects defendants' argument, based on Comcast Corporation v. National Association of African American-Owned Media, 140 S. Ct. 1009, 1019 (2020), that DeShazer has not pleaded sufficient facts to establish "that, but for race, [he] would not have suffered the loss of a legally protected right." Id. at 1019. The court concludes the well-pleaded facts, accepted as true, are minimally sufficient to state a § 1981 race discrimination claim that is "plausible on its face under the but-for causation standard." Id. (quotation marks and citation omitted).

5

'consider[s] such factors as the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Id.* (quoting Morris v. City of Colo. Springs, 666 F.3d 654, 664 (10th Cir. 2012)). Further, "'facially neutral abusive conduct can support a finding of racial animus sufficient to sustain a hostile work environment claim when that conduct is viewed in the context of other, overtly racially-discriminatory conduct,'" and such conduct should be considered in evaluating a hostile work environment claim. Brown, 708 Fed. Appx. at 521 (quoting Lounds, 812 F.3d at 1224).

Accepting the factual allegations as true and drawing all reasonable inferences in DeShazer's favor, the court concludes that DeShazer's factual allegations are not sufficient to overcome dismissal under Rule 12(b)(6). DeShazer alleges that in late 2020, he overheard a speakerphone conversation between a co-worker and a supervisor, both of whom are white, in which the co-worker used the n-word in referring to a third party. Specifically, the co-worker, who had gone to a location for work purposes, told his supervisor that a homeowner asked the co-worker to move his parked vehicle, which was blocking the homeowner's driveway. The co-worker related that he had said in reply: "I'll move when I get ready, n***er." Doc. no. 1, ¶ 13. The supervisor looked at DeShazer, who was standing nearby, and quickly picked up the telephone to keep the co-worker from being heard by DeShazer. However, the supervisor took no remedial action against the co-worker, and the co-worker was not disciplined for the racial slur.

The Tenth Circuit has stated "[t]he n-word is a 'powerfully charged racially term'" and "[i]ts use—even if done with benign intent and undirected at anyone specific—can contribute to a hostile work environment." Ford v. Jackson National Life Insurance Company, 45 F.4th 1202, 1233-34 (10th Cir. 2022) (quoting Lounds, 812 F.3d at 1230). It has also observed that "'perhaps no single act can more quickly

6

alter the conditions of employment' than 'the use of an unambiguously racial epithet such as [the n-word] by a supervisor.' This single incident might well have been sufficient to establish a hostile work environment." Lounds, 812 F.3d at 1230 (quoting Ayissi-Etoh v. Fannie Mae, 712 F.3d 572, 577 (D.C. Cir. 2013)).

Here, the single use of the n-word was *not* made by a supervisor to DeShazer or another co-worker. Instead, it was made by a co-worker. To date, the Tenth Circuit has not indicated that the single use of the n-word by a co-worker is sufficient to state a hostile work environment claim. But common sense strongly suggests that employment discrimination law should not be interpreted to put an employer at the mercy of a thoughtless employee who makes a racist comment in a conversation that the plaintiff happens to overhear from a speakerphone. In the Ford case, the n-word by a co-worker was accompanied by other offensive racist comments. And in the Lounds case, the term "nigga," viewed by the Tenth Circuit as equivalent to the n-word, was repeatedly used by a co-worker.[5] Similarly, the Tenth Circuit case, Tademy v. Union Pacific Corp., 614 F.3d 1132 (10th Cir. 2008), cited by DeShazer, involved more than one incident of the use of the n-word. Further, the Tenth Circuit has stated that, to support a hostile work environment claim, the "plaintiff must show more than a few isolated incidents of racial enmity[,]" there must be evidence of "a steady barrage of opprobrious racial comments." Lounds, 812 F.3d at 1223 (quotation marks and citations omitted).

In addition to the n-word incident, DeShazer alleges that he "began to notice" that the supervisors, all of whom were white, treated non-black employees more

---

[5] The court notes that in an unpublished case, Young v. City of Idabel, 721 Fed. Appx. 789, 800 (10th Cir. 2018), the Tenth Circuit concluded that the use of the n-word by the plaintiff's subordinate in referring to the plaintiff in a private conversation with another co-worker was not sufficient to establish a hostile work environment claim.

favorably. Doc. no. 1, ¶ 16. DeShazer alleges that, unlike non-black employees, he was not paid all incentives to which he was entitled. *Id.*, ¶ 17. He also alleges that he was assigned a work truck which frequently had mechanical and other problems, causing the truck to break down. Although he asked for repairs, they were often not done, and when he asked to be assigned an operable truck, he continued to be assigned the faulty truck. *Id.*, ¶ 19. Also, according to DeShazer, a black driver told him that he repeatedly applied for a promotion to dispatcher, but Thomas passed him over for less skilled and experienced non-black individuals. *Id.*, ¶ 21. Further, DeShazer points out that there were no black supervisors on the work site. *Id.*, ¶ 22. DeShazer alleges that he complained to ABC's human resources in or around January 2021 about the racial harassment and discrimination, and the representative told him she would speak to Thomas. Days later, Thomas met with DeShazer, but he claimed DeShazer was getting paid the incentives to which he was entitled and was otherwise dismissive of DeShazer's complaint. *Id.*, ¶¶ 23-25.

Considering the totality of the circumstances alleged by DeShazer, including the co-worker's use of the n-word, and viewing them in the light most favorable to him, the court concludes that the circumstances are not sufficient to plausibly establish that the work environment was permeated with discriminatory intimidation, ridicule, and insult sufficiently severe or pervasive to alter the conditions of DeShazer's employment and to create an abusive working environment. The court finds that dismissal of DeShazer's § 1981 and Title VII hostile work environment claims is appropriate. The claims will be dismissed without prejudice.

*Section 1981 and Title VII Retaliation Claims*

To state a prima facie case of retaliation under § 1981 and Title VII, DeShazer must allege "(1) he engaged in protected opposition to discrimination; (2) he suffered an adverse employment action; and (3) there is a causal connection between the

protected activity and the adverse employment action." O'Neal v. Ferguson Const. Co., 237 F.3d 1248, 1252 (10th Cir. 2001). Defendants do not dispute that DeShazer's complaint alleges facts to establish the first two elements of the prima facie case. Instead, they contend that DeShazer's complaint fails to allege facts establishing the third element—the causal connection element—because the alleged protected activity occurred approximately six months before DeShazer's termination.

In the Tenth Circuit, a causal connection may be shown by evidence of circumstances that justify an inference of retaliatory motive, such as protected conduct closely followed by adverse action. O'Neal, 237 F.3d at 1253. However, "[u]nless there is very close temporal proximity between the protected activity and the retaliatory conduct, the plaintiff must offer additional evidence to establish causation." Id. The Tenth Circuit has ruled that a three-month period between protected activity and retaliatory conduct, standing alone, is insufficient to establish causation. Anderson v. Coors Brewing Co., 181 F.3d 1171, 1179 (10th Cir. 1999). Here, the complaint alleges facts which indicate that more than three months elapsed between DeShazer's opposition to racial harassment and discrimination and his termination. Consequently, DeShazer must allege additional facts to establish causal connection. Piercy v. Maketa, 480 F.3d 1192, 1198-99 (10th Cir. 2007). Such additional facts may include facts showing the proffered reason for DeShazer's termination was pretextual. *See*, Proctor v. United Parcel Service, 502 F.3d 1200, 1209 (10th Cir. 2007). Accepting the complaint's allegations as true and drawing all reasonable inferences in DeShazer's favor, *see*, Brooks v. Mentor Worldwide, LLC, 985 F.3d 1272, 1281 (10th Cir. 2021), the court concludes that DeShazer has alleged facts minimally sufficient to show that the proffered reason or reasons for termination were pretextual. Therefore, the court concludes that dismissal of the § 1981 and Title VII retaliation claims is not appropriate.

*FMLA Claim*

Defendants challenge the FMLA claim alleged against Thomas on the basis that he cannot be held individually liable on that claim. According to defendants, DeShazer's complaint is devoid of allegations to plausibly establish he is an "employer" within the meaning of the FMLA. Defendants contend that to qualify as an "employer," an individual must not only have supervisory authority over the employee, but the individual must also have corporate responsibilities. Defendants assert that while DeShazer has alleged that defendant Thomas was his supervisor, he has not plausibly alleged that defendant Thomas had any corporate responsibilities.

When a plaintiff brings an FMLA retaliation or discrimination claim, he must establish that the defendant is his employer. *See*, Miles v. Unified School District No. 500, Kansas City, Kansas, 347 F. Supp. 3d 626, 629 (D. Kan. 2018) (citing 29 U.S.C. § 2615(a)(1), (2)). The Tenth Circuit has not yet determined whether an individual may qualify as an "employer" under the FMLA, and therefore be held liable for FMLA violations. *Id*. at 630. The plain language of the FMLA indicates they may. It broadly defines "employer" to include "any person who acts, directly or indirectly, in the interest of an employer to any of the employees of such employer." 29 U.S.C. § 2611(4)(A)(ii)(I). And the FMLA implementing regulations state in part that "individuals such as corporate officers 'acting in the interest of an employer' are individually liable for any violations of requirements of the FMLA." 29 C.F.R. § 825.104(d). Further, district courts (including this court) in the Tenth Circuit have concluded that individuals may be held liable as an employer under the FMLA. *See*, Rowley v. Brigham Young University, 372 F. Supp. 3d 1322, 1331 (D. Utah 2019); Miles, 347 F. Supp. 3d at 630; Cordova v. New Mexico, 283 F. Supp. 3d 1028, 1039 (D.N.M. 2017); Saavedra v. Lowe's Home Centers, Inc., 748 F. Supp. 2d 1273, 1284 (D.N.M. 2010); *see also*, Johnson v.

Oklahoma ex rel. Oklahoma Department of Veterans Affairs, Case No. CIV-20-1248-R, 2021 WL 1063803, at *7 (W.D. Okla. Mar. 19, 2021). This court agrees.

While district courts have concluded that individuals may qualify as employers, they have not agreed on how to determine whether they qualify. "Some courts apply the 'economic reality test,' . . . [which] requires the court to consider four nonexclusive factors in making its determination: '(i) whether the alleged employer has the power to hire and fire employees; (ii) whether the alleged employer supervises and controls employee work schedules or conditions of employment; (iii) whether the alleged employer determines the rate and method of payment; and (iv) whether the alleged employer maintains employment records.' Other courts apply a 'control' test, asking 'whether the [individual] defendant had the ability to control, in whole or in part, whether the plaintiff could take a leave of absence and return to the position.'" Zisumbo v. Convergys Corp., Case No. 1:14-cv-00134, 2020 WL 3546794, at *11 (D. Utah June 30, 2020) (quoting Saavedra, 748 F. Supp. 2d at 1292). Lastly, a number of courts apply a "corporate responsibilities" test, which requires that the individual defendant possess a corporate role beyond the role as supervisor. Id.; Heston v. FirstBank of Colorado, Case No. 19-cv-02890-KLM, 2020 WL 4350195, at *4 (D. Colo. July 28, 2020).

Although defendants advocate the "corporate responsibilities" test, this court has previously concluded that the economic reality test should apply. See, Gnapi v. American Farmers & Ranchers Mutual Insurance Co., Case No. CIV-21-1017-F, 2022 WL 1213131, at *2 (W.D. Okla. Apr. 25, 2022) (citing Rowley, 372 F. Supp. at 1332; Miles, 347 F. Supp. 3d at 630; Cordova, 283 F. Supp. 3d at 1039; Zisumbo, 2020 WL 3546794, at *12). That test includes inquiries into whether the alleged individual has the power to hire and fire employees; supervises and controls employee work schedules or conditions of employment; determines the rate and

11

method of payment; and maintains employment records. *Id*. Moreover, the court should consider the defendant's involvement and control over the plaintiff's ability to take FMLA leave. Miles, 347 F. Supp. 3d at 630; Cordova, 283 F. Supp. 3d at 1040. However, no single factor controls the result. *Id*. Further, at the motion to dismiss stage, the plaintiff need not allege specific facts about defendant's authority and control over plaintiff, particularly when factual issues dominate that analysis. *Id*.

Accepting the complaint's allegations as true and drawing all reasonable inferences in DeShazer's favor, *see*, Brooks, 985 F.3d at 1281, the court concludes that DeShazer pleads minimally sufficient facts to satisfy his burden under the economic reality test with respect to Thomas. Further, the court finds that DeShazer has alleged a plausible FMLA claim against him. The court therefore concludes that dismissal of the FMLA claim against Thomas under Rule 12(b)(6) is not appropriate.

*Tortious Interference/Interference with Prospective Economic Advantage*

Lastly, DeShazer alleges tortious interference and interference with prospective economic advantage claims against Thomas. The claim is asserted to arise from DeShazer's termination from employment with L&W and ABC. Thomas asserts that both claims are deficient because he is an agent of L&W and ABC, and as such, he could not have interfered with DeShazer's employment contract or business relationship with L&W and ABC, unless he acted in bad faith, he acted against the interests of L&W and ABC, and he acted in furtherance of his own personal interests. According to defendants, the complaint fails to allege facts sufficient to demonstrate that Thomas acted to further his own personal interests rather than the interests of the L&W and ABC.

DeShazer argues that he alleges sufficient facts to show that Thomas, in terminating him, was not acting to serve any legitimate or lawful purpose of L&W and ABC, but rather, he was pursuing his own personal motives. The complaint,

12

DeShazer points out, alleges that he complained to ABC's human resources in January 2021 about racial harassment and discrimination to which he was subjected, including a complaint that, unlike other younger and non-black drivers, he was not being paid for all incentives to which he was entitled. The representative told DeShazer she would speak to Thomas about the matter. Days later, defendant Thomas called DeShazer into a meeting. He claimed DeShazer was being paid the incentives to which he was entitled, and he was otherwise dismissive of his complaint. Around the same time, DeShazer was hospitalized for a medical condition and out of work for approximately one week. He had requested FMLA paperwork and underwent intermittent continuing treatment for his medical condition. In late June 2021, after returning to work from medical leave, Thomas asked DeShazer, during a meeting with another supervisor, where the remote for the crane attached to his work truck was located. After DeShazer explained that he had not been at work and thus could not know where the crane remote might be located, Thomas instructed him to go home. DeShazer had not taken or misplaced the remote control, and a co-worker, who worked in the same truck the day the remote allegedly went missing, told Thomas "the remote was in the truck while they were using it and was where it was supposed to be at the end of the day." Doc. no. 1, ¶ 44. The day after he instructed DeShazer to go home, Thomas texted DeShazer asking if human resources had contacted him. When he responded no, Thomas called DeShazer and told him he was being "let go." *Id*. at 38. When asked for a reason for termination, defendant Thomas gave no reason, stating only that they "just decided to let [DeShazer] go." *Id.* at 39. ABC's human resources specialists gave different reasons to the OESC and EEOC as the grounds for DeShazer's termination.

      Generally, an agent of a principal cannot be held liable for interfering with a contract or business relationship between the principal and a third party. *See*, Martin v. Johnson, 975 P.2d 889, 896 (Okla. 1998). An exception to the rule applies if the

agent was acting in bad faith and contrary to the interests of the employer. *Id*. For the exception to apply, the plaintiff must show that the agent was acting contrary to the business interest of his employer and in furtherance of the agent's own, personal interests. Grillot v. Oklahoma ex rel. University of Oklahoma, Case No. CIV-19-0241-F, 2019 WL 3558183, at *4 (W.D. Okla. Aug. 5, 2019).

The Rule 12(b)(6) motion now before the court presents a close issue as to whether plaintiff has a viable claim on either of the interference theories. It is tempting to dismiss those claims at this stage. Tacking an interference claim against an individual employee onto a statutory employment discrimination claim is a strategy that is susceptible of abuse. At a later stage—summary judgment or Rule 50—the court is going to be looking for a solid indication that Thomas was acting contrary to the business interest of his employer and in furtherance of his own personal interests. But, for now, and taking all factual allegations as true and drawing all reasonable inferences from those allegations in DeShazer's favor, the court concludes that DeShazer's interference allegations are minimally sufficient to clear the bar. The court concludes that dismissal of the tort claims against Thomas under Rule 12(b)(6) is not appropriate.

III.

Accordingly, Defendants' Partial Motion to Dismiss Plaintiff's Amended Complaint (doc. no. 14) is **GRANTED in part** and **DENIED in part**. Plaintiff's § 1981 and Title VII hostile work environment claims are **DISMISSED WITHOUT PREJUDICE**.

IT IS SO ORDERED this 17th day of April, 2023.

STEPHEN P. FRIOT
UNITED STATES DISTRICT JUDGE

23-0045p001.docx